## United States Bankruptcy Court, Northern District of Illinois

| Name of Assigned Judge | Manuel Barbosa | CASE NO. | 08-B-22322 |
|---|---|---|---|
| DATE | February 10, 2011 | ADVERSARY NO. | 09-A-00231 |
| CASE TITLE | Edward A. Carlson, Debtor<br><br>North Shore Community Bank & Trust Co., Plaintiff<br><br>v.<br><br>Edward A. Carlson, Defendant. | | |

**DOCKET ENTRY TEXT**

For the reasons set forth below, summary judgment is entered in favor of the Plaintiff.

■[ For further details see text below.]

### Memorandum Order

    The Court has already set forth the factual background and the legal standard for a complaint to determine dischargeability under 11 U.S.C. § 523(a)(2)(A) and (a)(2)(B) in more detail in its Memorandum Opinion issued October 6, 2009, denying the Defendant's motion dismiss. At issue now is the Plaintiff's motion for summary judgment on Count I of the Complaint. Although the Defendant has demonstrated a

genuine issue of material fact as to one of the alleged misrepresentations made by the Defendant, he has not demonstrated a genuine issue as to the second misrepresentation. Because the second misrepresentation is sufficient to support the Plaintiff's claim independently, summary judgment will be entered in favor of the Plaintiff.

## Standard for Summary Judgment

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that there is no genuine issue of material fact in dispute. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986). Disputed facts that are not outcome-determinative are not material and will not preclude summary judgment. Montgomery v. American Airlines, Inc., 626 F.3d 382, 389 (7th Cir. 2010). In determining whether the movant has met its burden, the Court should consider all reasonable inferences in a light most favorable to the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587.

However, before a movant "can benefit from a favorable view of evidence, he must first actually place evidence before the courts." Montgomery, 636 F.3d at 389. The movant must "make a showing sufficient to establish any essential element of [his] cause of action for which [he] will bear the burden of persuasion at trial." Id. Similarly, once the movant has met that initial burden of production, the non-movant "may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" Siegel v. Shell Oil Co., 612 F.3d 932, 937 (7th Cir. 2010). The Seventh Circuit Court of Appeals has called summary judgment the "'put up or shut up' moment in litigation … by which we mean that the non-moving party is required to marshal and present the court with the evidence she contends will prove her case. And by evidence, we mean evidence on which a reasonable jury could rely." Goodman v. Nat'l Sec. Agency, Inc., 621 F.3d 651, 654 (7th Cir. 2010). Even uncorroborated, self-serving testimony, "[i]f based on personal knowledge or firsthand experience," may prevent summary judgment against the non-moving party, as "such testimony can be evidence of disputed material facts." Montgomery, 636 F.3d at 389 (internal citations omitted). But mere conclusory allegations do not constitute evidence. Id. Summary judgment is not an appropriate time for weighing of evidence, but the "mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive a summary judgment motion; there must be evidence on which the jury could reasonably find in favor of the nonmoving party." Siegel, 612 F.3d at 937 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505 (1986)).

Local Rule 7056-1 requires a party bringing a motion for summary judgment to submit a detailed statement of material facts that the movant believes are uncontested supporting the motion, and Local Rule 7056-2 requires the party opposing the motion for summary judgment to submit a concise response to the movant's statement of facts. The Plaintiff filed a Rule 7056-1 Statement of Undisputed Material Facts, the Defendant filed a Rule 7056-2 Response and Statement of Additional Facts, and the Plaintiff filed a Response to the Defendant's Statement of Additional Facts.[1]

---

[1] The Defendant also filed a Supplemental Response and Statement of Undisputed Material Facts. The Plaintiff objected to this filing, since it was not authorized under the Rules and leave was not granted by the Court. However, it is irrelevant whether the Court considers the supplemental response, since it adds nothing to the Defendant's case. The amended response was almost identical to the original response, except it attached an amended affidavit of Mr. Carlson and a "sample" litigation disclosure. The

## Undisputed Facts

The Plaintiff seeks summary judgment on Count I of its Complaint. Count I alleges that when the Plaintiff, North Shore Community Bank and Trust Company ("North Shore"), lent $700,000 to Comprehensive Management Services, Inc. ("CMS"), an entity in which Mr. Carlson was the president and sole shareholder, in the spring of 2006 and an additional $550,000 to CMS in October 2006, Mr. Carlson made two misrepresentations upon which the bank justifiably relied. First, the loans to CMS were purportedly backed by the grant of a mortgage by Fox Valley Ice Arena, LLC ("Fox Valley") in Fox Valley's real property located in Geneva, Illinois, and the Plaintiff alleges that Mr. Carlson misrepresented that he was authorized to sign for Fox Valley and grant the mortgage on behalf of Fox Valley. Second, Mr. Carlson granted the Plaintiff a personal guaranty for the loans to CMS, and the Plaintiff alleges that Mr. Carlson falsely misrepresented that there was no litigation pending or threatened against him at the time he signed the guaranties and the Plaintiff extended the loans.

Mr. Carlson has admitted the following material facts:

- The Plaintiff lent CMS funds totaling $1,250,000. (Defendant's Response to Plaintiff's Statement of Undisputed Material Facts ("D's 7056-2 Statement") ¶11).
- Mr. Carlson was the president and sole shareholder of CMS. (D's 7056-2 Statement, Ex. A ¶3).
- The grant of the mortgage in Fox Valley's real estate was to "induce North Shore to make a loan to CMS." (D's 7056-2 Statement, ¶10).
- Mr. Carlson signed the mortgage, as well as the modification of mortgage, on behalf of Fox Valley. (D's 7056-2 Statement, ¶¶13, 16).
- Mr. Carlson held himself out to be a Member of Fox Valley and as authorized to grant the mortgage on behalf of Fox Valley. (D's 7056-2 Statement, ¶14).
- The mortgage contained an express warranty that the grantor had "the full power, right, and authority to enter into this Mortgage and to hypothecate the Property." (D's 7056-2 Statement, ¶15).
- Mr. Carlson was not a Member of Fox Valley and was never a Member of Fox Valley. (D's 7056-2 Statement, ¶18).
- The Operating Agreement for Fox Valley required the approval of Members owning at least 75% of the membership interests to pledge substantially all of the assets of the Company as security for a loan. (D's 7056-2 Statement, ¶¶19, 23).
- At the time Mr. Carlson signed the mortgage, he knew that the consent of all of the Members of Fox Valley was needed to authorize the grant of a mortgage on Fox Valley's real property to North Shore. (D's 7056-2 Statement, ¶24).[2]

---

amended affidavit appeared to be in response to the Plaintiff's objection that the original affidavit did not state that it was made on Mr. Carlson's personal knowledge. However, to the extent that the original affidavit contained statements about Mr. Carlson's own mental state, it is implied that the statement was made on his personal knowledge. To the extent the amended affidavit contains statements about actions that his staff or lawyers took, Mr. Carlson provides no foundation for having personal knowledge of those actions, and a general allegation that the amended affidavit was based on his personal knowledge does not cure that defect. Actually, the amended affidavit does not allege that actions were taken by his attorneys or staff at all. It states only that Mr. Carlson asked his staff or lawyers to send a litigation disclosure, not that the disclosures were actually sent. Similarly, the "sample" litigation disclosure is irrelevant, since Mr. Carlson does not allege that it was ever sent to CNA.

[2] Although Mr. Carlson has argued that at the time of the loan he may have believed he was a "Member" of Fox Valley, he has not disputed that the operating agreement required the consent of *at least 75%* of the Members to grant the mortgage. Even if he believed he was a Member, he has not argued that he believed he owned or controlled at least 75% of the membership interest. Instead, he has admitted that he knew the proper number of Members had not consented and that he did not have authority to

- At all relevant times, Fox Valley had two Members: Emerald Arena Group, L.P. and FV Arena Partners, LLC. (D's 7056-2 Statement, ¶20).
- Mr. Carlson never obtained the approval of Emerald Arena Group, L.P. or FV Arena Partners, LLC, to grant a mortgage in the real property of Fox Valley, and therefore Fox Valley never provided authority for or ratified the action of granting a mortgage on its property to North Shore. (D's 7056-2 Statement, ¶¶25, 26).
- In determining whether to grant loan financing to CMS, North Shore relied on the representations made by Mr. Carlson that he was authorized to grant a mortgage on Fox Valley's real property. (D's 7056-2 Statement, ¶37).
- In order to induce North Shore to lend the initial $700,000 to CMS, Mr. Carlson signed a guaranty of all the indebtedness on June 1, 2006, and in order to induce North Shore to lend the additional $525,000, Mr. Carlson signed another guaranty on October 16, 2006. (D's 7056-2 Statement, ¶¶27, 28).
- In connection with the guaranty, Mr. Carlson delivered a statement of his financial position, dated October 1, 2005, which did not disclose any filed lawsuits against him or any claims pending or threatened against him personally as of that date. (D's 7056-2 Statement, ¶30).
- In the guaranties that he signed in 2006, Mr. Carlson represented that no material adverse change had occurred in his financial condition since the date of the most recent financial statements provided to North Shore and that no litigation, claim, investigation, administrative proceeding or similar action against him was pending or threatened. (D's 7056-2 Statement, ¶29).
- As of June 1, 2006, three lawsuits were pending against Mr. Carlson personally, one of which subsequently resulted in a $14,000,000 consent judgment against him. (D's 7056-2 Statement, ¶¶32-35).
- In determining whether to grant loan financing to CMS, North Shore relied on the representations made by Mr. Carlson that no pending lawsuits against him existed at the time he signed the guaranties. (D's 7056-2 Statement, ¶37).
- In February 2008, CMS defaulted on the loan, failed to repay the accelerated indebtedness, totaling $1,342,739.57, upon demand, and Mr. Carlson also failed to repay such amount under his guaranty upon demand by North Shore. (D's 7056-2 Statement, ¶¶39-41).
- As of April 30, 2010, Mr. Carlson owed $1,645,553.29 on the guaranty for principal, fees and interest, but not including attorneys' fees. (D's 7056-2 Statement, ¶42).

Despite these admissions, Mr. Carlson argues that there are genuine issues of material fact warranting a denial of summary judgment. First, Mr. Carlson argues that the misrepresentations about the absence of pending litigation were not intentional. Second, Mr. Carlson argues that, even if North Shore relied on the misrepresentation about authority to grant the mortgage, the bank did not justifiably rely on the representation, either because the mortgage is valid despite the lack of authorization or because North Shore would have given the loan even without the mortgage.

### Litigation Misrepresentation

Mr. Carlson alleged in his responsive statement of additional facts that he relied on his staff and attorneys to update his personal financial statement and prepare a litigation disclosure when he signed the two guaranties, and he supported this allegation with his own affidavit. (D's 7056-2 Statement, pgs. 12-13, ¶¶5-8, Ex. A). He therefore argues that he did not make the representation with knowledge of its falsity or with

---

grant the mortgage. Since the material misrepresentation at issue was that he was authorized to sign the mortgage on behalf of Fox Valley, it is irrelevant whether he believed he was a "Member" or not.

"reckless disregard for its truth" and with "intent to deceive." Ojeda v. Goldberg, 599 F.3d 712, 716-17 (7th Cir. 2010). He alleges that North Shore never directly asked him if there was any pending litigation, that he thought his attorneys had provided the bank with a list of litigation, and that he did not realize the full implications of the warranty language in the guaranties. (D's 7056-2 Statement, pg. 13, ¶8).

Mr. Carlson's allegation and statement in his affidavit that he had asked his staff and lawyers to prepare and deliver accurate litigation lists is sufficient to create a genuine issue of material fact as to whether he had knowledge of the statement or intent to deceive. 11. U.S.C. § 523(a)(2)(B)(iv). The Plaintiff is correct that Mr. Carlson's allegation and affidavit are not enough to support an argument that a litigation disclosure was in fact delivered, since he has presented no evidence based on personal knowledge that they were ever actually prepared or delivered. But his allegation is enough to raise a genuine issue as to Mr. Carlson's knowledge and intent. Blaming staff or an attorney might not ultimately be a defense, as in some instances the acts or intent of an agent or partner may be imputed to even an innocent party. See, e.g., Casablanca Lofts LLC v. Abrham, 436 B.R. 530, 537 (N.D. Ill. 2010) (Guzman, J.) (holding that "an innocent partner's debt for money to the extent obtained by the actual fraud of one of his two other partners is not dischargeable under Section 523(a)(2)(A)"); In re Bowles, 318 B.R. 129, 145 (Bankr. E.D. Wisc. 2004)("[I]n the context of a § 523(a) nondischargeability action, fraud will be imputed to the principal only if it is proven that he knew or should have known of the fraud."). However, the Plaintiff has not alleged or provided evidence that Mr. Carlson's attorneys or staff had such fraudulent intent or that imputation of such intent to Mr. Carlson is warranted. Therefore, there exists a genuine issue of fact as to whether the Debtor intended to misrepresent the existence of litigation against him or had knowledge of the falsity of the misrepresentation.

## Mortgage Authority Misrepresentation

On the other hand, the Defendant has failed to demonstrate a genuine issue of material fact as to his misrepresentation about his authority to grant a mortgage on behalf of Fox Valley. To sustain a claim under Section 523(a)(2)(A) based on false representation, a creditor must show that "(1) the debtor made a false representation or omission, (2) that the debtor (a) knew was false or made with reckless disregard for the truth and (b) was made with the intent to deceive, (3) upon which the creditor justifiably relied." Ojeda v. Goldberg, 599 F.3d 712, 716-17 (7th Cir. 2010). Mr. Carlson has admitted that he had no authority at the time he signed the mortgage, that he knew he did not have authority at the time, that Fox Valley never ratified the action and that he signed the mortgage and mortgage modification to induce North shore to extend the loans. It is therefore not disputed that the Plaintiff has demonstrated the first two elements of a Section 523(a)(2)(A) complaint. The Defendant, however, claims that there is a genuine issue as to whether North Shore justifiably relied on the effectiveness of the mortgage.

"Justifiable reliance is a less demanding standard than reasonable reliance; it requires only that the creditor did not 'blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'" Id., 599 F.3d at 717 (citing Field v. Mans, 516 U.S. 59, 71 (1995)). It is a subjective, not an objective, standard, but a "creditor has no duty to investigate unless the falsity of the representation would have been readily apparent." Id. Mr. Carlson does not dispute that North Shore believed that he was authorized to grant the mortgage or that it should have known better or investigated further whether he was authorized. Instead, he argues that the mortgage was not the main reason that the bank extended the loan, and that it would have extended the loan even without the mortgage. To support this, he offers a deposition of a former bank officer at North Shore, who was a loan officer on the loan to CMS, who stated that the Fox Valley mortgage was "not the underlying reason" why they did the loan, and

that it just "sweeten[ed] the pot ... -- enhance[d] the deal, [made] it better." (D's 7056-2 Statement, pg. 12, ¶¶3-4, Ex. C, pg. 30, 32).[3]

To satisfy the reliance element of § 523(a)(2)(A), the creditor must show that the debtor made a material misrepresentation that was the cause-in-fact of the debt that the creditor wants excepted from discharge. Rose v. Gehaar (In re Gelhaar), No. 09-A-00504, 2010 WL 4780314, at *8 (Bankr. N.D. Ill. Nov. 16, 2010) (Squires, J.) (citing Mayer v. Spanel Int'l Ltd. (In re Mayer), 51 F.3d 670, 676 (7th Cir.1995) ("Reliance means the conjunction of a material misrepresentation with causation in fact.")). In the context of §523(a)(2)(B) complaints, numerous cases have used a "but for" test to determine whether a statement is "materially" false under Section 523(a)(2)(B)(i), see, e.g., Webster Bank, N.A. v. Contos (In re Contos), 417 B.R. 557, 564 (Bankr. N.D. Ill. 2009)(Squires, J.), though other courts have applied a "substantial untruth" test, whereby a statement is materially false if it "paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." Id. The Seventh Circuit Court of Appeals has noted that the "but for" test is a "recurring guidepost" for determining material falsity, but has not decided whether satisfaction of the "but for" test is an essential part of a claim under Section 523(a)(2)(B). Selfreliance Fed. Credit Union v. Harasymiw (In re Harasymiw), 895 F.2d 1170, 1172 (7th Cir. 1990). However, the complaint with respect to the mortgage authority misrepresentation is being brought under Section 523(a)(2)(A), not Section 523(a)(2)(B), and the standards for materiality in the two sections are not necessarily the same. For example, Section 523(a)(2)(B) has an express materiality requirement while Section 523(a)(2)(A) does not. Examining the difference in language between the two sections, the Supreme Court has held that the standard for <u>reliance</u> is not the same for Section 523(a)(2)(A) as for Section 523(a)(2)(B). Field v. Mans, 516 U.S. 59, 71 (1995). Elsewhere in the Field opinion, the Court made clear that, despite the absence of an express provision, Section 523(a)(2)(A) has a materiality requirement, but did not examine the standard or whether it differed from subsection (B). Field, 516 U.S. at 66, 68 (noting that "[n]o one, of course, doubts that some degree of reliance is required to satisfy the element of causation inherent in the phrase 'obtained by', and noting that "common sense would balk" at interpreting the absence of an express materiality requirement to mean that misrepresentations need not be material). The Seventh Circuit has not reviewed the proper standard for materiality in a Section 523(a)(2)(A) case, but at least one circuit court of appeals, in reviewing a Section 523(a)(2)(A) claim has stated that "reliance need not be the 'but-for' cause of the lender's actions: It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision." AT&T Universal Card Servs. v. Mercer (In re Mercer), 246 F.3d 391, 413 (5th Cir. 2001)(internal citations omitted). As discussed below, whatever the standard for materiality, the Defendant has not raised a genuine issue that the misrepresentation as to mortgage authority was not material.

The Defendant argues that, since there is a possibility that North Shore would have extended the loans even without the mortgage, the misrepresentation was not the "cause-in-fact" of the debt. However, the fact that the mortgage was not the bank's primary source of collateral does not mean that it was irrelevant to their decision to make the loan. At least at one point, the Fox Valley property was appraised for around $13 million. (D's 7056-2 Statement, Ex. C, pg. 13). While it does not appear that that appraisal was from the same time as the loan to CMS, and there may have been existing senior mortgages at the time of the loan, the property was certainly not of insignificant size or value for a $1.25 million loan. Nor has the Defendant presented any evidence that the mortgage was of <u>no</u> value to the bank. The Court believes that, from the evidence presented,

---

[3] However, in the same deposition, the bank officer also noted that the loan had to be approved by a committee in the bank and that the proposed loan was only presented to the committee with the Fox Valley mortgage included. (D's 7056-2 Statement, Ex. C, pg. 32).

no reasonable finder of fact could conclude that the mortgage was not at least a "substantial factor" in its decision to lend money, even if it was not the primary factor. Even if the Court were to apply the "but-for" test of materiality, it cannot be genuine disputed that the Plaintiff has satisfied this element. Even if North Shore might have lent money to CMS without the mortgage, as the Defendant alleges, there is no evidence that that they would have lent money *on the same terms*. Surely if in negotiating the loan deal Mr. Carlson had informed the bank that he could not offer the mortgage in the Fox Valley property, North Shore would have demanded some sort of *quid pro quo* for giving up that term of the deal. They might have demanded additional collateral, a reduction in the amount loaned or an increase in interest rate or other terms.

Finally, Mr. Carlson suggests that, since he might have had apparent authority to grant the mortgage on behalf of Fox Valley, the mortgage might be enforceable by North Shore, and that there is therefore an issue of fact as to whether North Shore was harmed by the misrepresentation. However, Section 523(a)(2)(A) requires only that the credit was extended in reliance on the misrepresentation. As the Supreme Court has stated, "[o]nce it is established that specific money or property has been obtained by fraud, however, 'any debt' arising therefrom is excepted from discharge." Cohen v. de la Cruz, 523 U.S. 213, 219 (1998)(finding punitive damages nondischargeable under Section 523(a)(2)(A)). Similarly, in Ojeda v. Goldberg, 599 F.3d 712 (7th Cir. 2010) the Seventh Circuit held that, where the original loan was not induced by fraud but a later agreement to forebear was induced by fraud, the portion held non-dischargeable was not limited to merely interest and attorney's fees accrued after the forebearance agreement. Instead, because the creditor "chose to forbear on the entire loan, [the court found] that same amount non-dischargeable." 599 F.3d at 720. Therefore, the amount that is non-dischargeable for an overstatement of the value of collateral is not necessarily limited to the amount of that overstatement. The focus is on what caused the lender to extend the loan, not on what caused the debtor to fail to repay it. See, e.g., In re McFarland, 84 F.3d 943, 947 (7th Cir. 1996) (criticizing district court's opinion for "impl[ying] the existence of a detriment requirement in the statute" when "the text of § 523(a)(2)(B) contains no damage or detriment requirement, and the courts are not empowered to add one"). As the Court discussed above, it is not disputed that North Shore extended the loan at least in part in reliance on the validity of the mortgage, and therefore the entire loan is non-dischargeable. Moreover, even if North Shore were ultimately able to enforce the mortgage, that does not mean they were not harmed by the misrepresentation. Mr. Carlson's lack of actual authority at the very least put a cloud on the enforceability of the mortgage, and it appears that Fox Valley will not acquiesce. Mr. Carlson has admitted that Fox Valley has never agreed to ratify the granting of the mortgage. Even if the bank is ultimately able to enforce the mortgage, it will still have to expend additional time, costs and efforts in litigation to do so. And those are costs that the Bank sought to avoid, as demonstrated by the representation as to validity and authorization included in the mortgage agreement. Also, even if North Shore is ultimately able to enforce the mortgage as against Fox Valley, Fox Valley or its members might bring suit against Mr. Carlson for exceeding his authorized powers as manager. Because North Shore relied in part on the personal guaranty of Mr. Carlson, the bank could have had an interest in preventing such litigation, as demonstrated by their requirement that Mr. Carlson disclose any litigation pending or threatened against him.

Therefore, the Defendant has failed to raise a genuine issue of material fact as to why summary judgment should not be entered against him under Section 523(a)(2)(A) with respect to his misrepresentation about his authority to grant a mortgage in the Fox Valley property.

## Conclusion

For the foregoing reasons, summary judgment will be entered in favor of the Plaintiff on Count I. Accordingly, the Court will enter a judgment finding that the debt owed by the Defendant to the Plaintiff under his personal guaranties of the debt of CMS is non-dischargeable under 11 U.S.C. §523(a)(2)(A). The Court will set a later status date for the determination of the requested monetary judgment.

The foregoing constitutes findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

February 10, 2011

Judge Manuel Barbosa